FIFTH MADISON CORPORATION, Respondent, et al., Plaintiffs, *v.* FRANCES M. PURDY et al., as Executrices of HERBERT McL. PURDY, Deceased, Appellants, et al., Defendants.

First Department, October 24, 1961.

*Harry Bijur* of counsel (*Louis Rous* with him on the brief; *Bijur & Herts,* attorneys), for appellants.

*Eugene Blanc, Jr.,* of counsel (*Wilmurt B. Linker* and *Dorothy S. McCrea* with him on the brief; *Delafield, Hope, Linker & Blanc,* attorneys), for respondent.

STEUER, J. Defendants are the executrices of Herbert Purdy, deceased. Prior to his death he owned half the stock of Purdy Management Co. His brother Frederick owned the other half. Purdy Management Co. (herein called Management) was managing agent for several corporations that owned buildings. At

the time of Herbert's death it was agent for five such companies. Of these, all the stock of one was owned by Herbert; all the stock of another was owned by Frederick; and all the stock of two others was owned equally by the brothers. The fifth corporation is the plaintiff in this action. It had two classes of stock, A and B. The B stock had the sole voting rights and the right to dividends. The A stock had the right to share in the disposition of the assets of the corporation on its dissolution. The B stock consisted of 25,000 shares, of which each brother owned 5,723. The balance, or 13,554 shares, was owned by Purdy Management. The A stock, consisting of 5,000 shares, was to a great extent publicly owned.

Management collected the rents of the five buildings owned by these corporations and paid the expenses of operation. It deposited the moneys thus collected in its own bank account and did not segregate the funds of the various corporations. From time to time the brothers borrowed from Management, and these loans at the time of Herbert's death appeared on Management's books as $233,344.74 due from Herbert and $170,832.99 due from Frederick. At that time Management owed to plaintiff $439,-908.19. Aside from the receivables represented by the loan to the brothers, Management had assets of almost $700,000. Its indebtedness, including that to the plaintiff but excluding that to the brothers' wholly owned corporations, amounted to less than $600,000. So that, whether its standing is regarded as entirely independent of the brothers and their corporations, or whether one eliminates from its accounts those items which represent credits and debits of the brothers to themselves as owners of the several corporations (not including the plaintiff), Management was entirely solvent.

Shortly after Herbert's death, Frederick paid to Management and caused Management to pay to plaintiff his then indebtedness to Management. He then caused plaintiff to institute this suit against Herbert's estate. While the action embraced other matters, on this appeal we are concerned only with the third cause of action, which seeks to recover from the estate for the benefit of plaintiff alone the indebtedness of the estate to Management.

The complaint alleges that Herbert, as an officer of plaintiff, borrowed from plaintiff the sum in question and failed to repay it. Strictly regarded, giving full credit to the form of the transactions, the proof failed completely. Decedent never borrowed anything from the plaintiff. But even if corporate forms are overlooked and the corporations regarded as the individuals' alter egos, the case is not made out. Decedent's indebtedness

was not the result of a single borrowing. At this point it may be well to note that the nature of the transactions was established by the skimpiest of proof, while Management's books, which would constitute proof of the amounts involved, were not produced. The secondary evidence from the balance sheets was not in all instances convincing. The only evidence of the nature of the transactions was that when the brothers' accountant informed them that the Internal Revenue Department was beginning to raise questions as to whether these entries were in fact loans or were really payments of dividends or salaries, the brothers replied that they were in fact loans. This admission, as far as it affects Herbert, merits the closest scrutiny. Defendants were in no position to explain or deny it. In addition, the obvious motive to falsify the nature of the transactions opens the explanation to challenge. But even if the testimony be given full credit — not only as to what was said but as to what the transactions really were — the end is not yet.

Recovery must be based on the theory that Management, as agent, breached a duty to plaintiff and that defendant was at once the instigator and beneficiary of the breach. The only possible breach — or at least the only one suggested — is the failure to segregate the funds of the plaintiff in Management's hands. Assuming, without deciding, that this failure was a dereliction of duty on Management's part and that Herbert would be responsible for it, he could only become responsible if and to the extent that plaintiff suffered from it. It might appear that as Management would have been at all times able to respond to a demand from the plaintiff for payment, and no demand ever having been made, that plaintiff suffered no damage from the commingling of funds; but even if damage is presumed, it would be limited to such funds as belonged to plaintiff and found their way into Herbert's hands through the means described.

And here the attempt at proof fails utterly. It was established that the brothers' borrowing was of long duration, antedating their acquisition of stock interest in the plaintiff and Management's handling of plaintiff's affairs and money. Just how much Herbert owed Management at this time does not appear, but whatever it was it would not be recoverable by plaintiff because it did not include any of plaintiff's funds. As to the undetermined balance, the figures are susceptible of the explanation that the funds borrowed consisted entirely of moneys collected by Management on behalf of the other four corporations. So as the record stands, there is a showing of commingled funds by an agent, that some of these funds have been borrowed by the defendant, that the agent is financially

responsible, and that there is nothing to show that the funds borrowed are any part of the sums that the agent held on behalf of the plaintiff.

It might be that in an action for an accounting, upon a showing of wrongdoing on the part of the deceased his estate would be compelled to show the source of the funds that came to him through Management. Suffice it to say that plaintiff has not brought that type of action and has very likely eschewed it for reasons that doubtless appeal to its controlling interests. Its selection of the type of action it brought was deliberate, and it is fair that it should be bound by rules applicable to such actions and, pursuant to them, no case has been proved.

The judgment should be modified on the law and on the facts, to the extent that it is appealed from, so as to dismiss the third cause of action and as thus modified affirmed, with costs to appellants.

BREITEL, J. P., VALENTE, McNALLY and STEVENS, JJ., concur.

Judgment, so far as appealed from, unanimously modified, on the law and on the facts, so as to dismiss the third cause of action and as so modified, affirmed, with costs to appellants.